UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14342-RGS

WILLIAM PATRICK MCNELLEY

v.

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY

MEMORANDUM AND ORDER ON APPELLANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS TO REVERSE THE DECISION OF
THE COMMISSIONER

May 29, 2015

STEARNS, D.J.

William Patrick McNelley seeks review of a final decision of the
Commissioner of the Social Security Administration (SSA) adopting an
Administrative Law Judge's (ALJ) determination that McNelley is not
disabled as defined by the implementing regulations of the Social Security
Act (SSA). *See* 20 C.F.R. § 404.1520(f). The Commissioner determined that
while McNelley is unable to work at any of his prior occupations, he is able
to perform less physically demanding work. In seeking to overturn the
Commissioner's decision, McNelley contends that the ALJ failed to properly
weigh the medical evidence and unfairly evaluated McNelley's credibility.
McNelley's petition to the district court is brought as a matter right pursuant

to 42 U.S.C. § 405(g), after his application, motion for reconsideration, and request for review by the Appeals Council were successively denied.

## BACKGROUND

On April 30, 2012, McNelley applied for Disability Insurance Benefits (DIB), claiming an inability to work because of recurring anxiety with panic attacks and agoraphobia since January 1, 2009.[1] The application was denied initially and after reconsideration. On October 18, 2013, ALJ Paul W. Goodale heard testimony from McNelley and from James Cohen, a court-appointed vocational expert (VE). The ALJ issued his decision, unfavorable to McNelley, on December 27, 2013. After the Appeals Council denied McNelley's request for review on October 14, 2014, by operation of law the ALJ's decision became the final decision of the Commissioner.

McNelley was born on February 19, 1965. He is a high school graduate, has a certificate in computer proficiency, and is able to communicate in English. McNelley had previously worked as a machinery operator, machine feeder, roofer, utility worker, forklift operator, and motel/hotel desk manager.

---

[1] At the October 18, 2013 hearing, McNelley amended his alleged disability onset date from January 1, 2009, to February 15, 2010.

For the most part, McNelley lives a solitary life at home. He watches television, prepares his meals, keeps doctor's appointments, and does his own shopping. McNelley testified that, because of his anxiety, he often "freezes" and is unable to leave his house, avoids crowds, has difficulty sleeping, and is unable to work. Transcript (Tr.) at 107.

### *Medical Evidence*

McNelley alleges that he became disabled on February 15, 2010, but did not seek treatment until April 4, 2012, when he presented to the emergency room at Whidden Hospital. At Whidden, he was prescribed Xanax, a benzodiazepine derivative used to alleviate feelings of anxiety. After this initial hospital visit, McNelley treated with a number of mental health professionals. On April 7, 2012, McNelley was seen by Dr. Jeffrey Phillips, a family practitioner, who prescribed Zoloft, another anti-anxiety drug. On April 18, 2012, McNelley returned to Whidden's emergency room asking for more medication. Dr. Phillips followed up with McNelley on April 20, 2012, diagnosing him with social anxiety disorder and prescribing yet another anti-anxiety drug, Celexa. On April 24, 2012, after an examination, Peter McEntee, a licensed clinical social worker, diagnosed McNelley with panic disorder with agoraphobia.

On July 9, 2012, Dr. Ronit Dedesma, a treating psychiatrist at Cambridge Health Alliance, also diagnosed McNelley with panic disorder with agoraphobia. McNelley testified that he experiences panic attacks five to six days a week and that they are especially severe an average of three times a week. *Id.* at 118. Dr. Dedesma opined that McNelley's disability "markedly" limits his ability to perform scheduled activities, keep regular job attendance, sustain ordinary daily routine without supervision, and complete a normal workweek. *Id.* at 609-610. She later opined that McNelley's panic disorder with agoraphobia had "progressed to a somewhat paralyzing point." *Id.* at 617.

Over time, McNelley has been prescribed a number of anti-anxiety medications, including Xanax, Celexa, Clonazepam, Remeron, Effexor, and Atarax. Between April of 2012 and September of 2013, McNelley's Global Assessment of Functioning (GAF) scores ranged from 50 to 55.[2] McNelley's

---

[2] "A GAF score between 41 and 50 represents '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Amaral v. Comm'r of Soc. Sec.*, 797 F. Supp. 2d 154, 158 n.1 (D. Mass. 2010) (emphasis in original), citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 34 (4th ed., text rev. 2000). "GAF scores in the 51-60 range indicate '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Warren v. Astrue*,

reported symptoms include worry, fidgeting, racing thoughts, decreased

concentration, shakiness, feelings of apprehension, pressure in his chest,

shortness of breath, dry mouth, anger, and nausea. McNelley's primary

symptoms are panic attacks, avoidance, and general worry.

## THE ALJ'S DECISION

The ALJ made the following written findings of fact and conclusions of

law:

1. The claimant meets the insured status requirements of the SSA through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 15, 2010, the amended alleged onset date.

3. The claimant has the following severe impairment: anxiety with panic attacks and agoraphobia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to only occasionally climbing ladders, ropes, and scaffolds.; and he must avoid even moderate exposure to extreme noise and vibrations, to closed areas, and to workplace hazards such as dangerous moving machinery or unprotected heights. He is limited to the performance of low-stress work with only occasional decision-making and occasional changes in the work setting. He will be off-task for less than 10% of the workday, and cannot [sic] perform

---

2011 WL 31292, at *1, n.1 (D. Mass. Jan. 4, 2011) (emphasis in original), citing DSM-IV 34.

production rate or pace work. He can have only occasional contact with the general public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 19, 1965 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2010, through the date of this decision.

## DISCUSSION

Judicial review is limited to determining whether the findings of the Commissioner are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The findings of the Commissioner will be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). However, the Commissioner's

findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

Disability determinations follow the "five-step sequential evaluation process" mandated by 20 C.F.R. § 404.1520. The analysis requires that the ALJ first determine whether or not a claimant was gainfully employed prior to the onset of the disabling condition. At the second step, the ALJ must determine whether a claimant suffers from a severe impairment limiting his ability to work. If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of the regulations, the claimant is presumptively deemed disabled. If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that his disability is sufficiently serious to preclude a return to his former occupation. If he meets that burden, the Commissioner at the fifth step is obligated to prove that there are other jobs in the national economy that the claimant is able to perform. *See Gonzalez Perez v. Sec'y of HEW*, 572 F.2d 886, 888 (1st Cir. 1978) ("[A] claimant must establish that he can no longer perform his prior vocation before the government is obligated to prove that alternative employment is available for a person in claimant's condition.").

The ALJ found at Step 1 that McNelley has not engaged in substantial gainful employment since February 15, 2010. The ALJ also concluded that McNelley had the following severe impairments: anxiety with panic attacks and agoraphobia. At Step 3, however, he determined that these impairments did not meet or medically equal one of the Appendix 1 impairments. He therefore proceeded to Step 4.

Steps 4 and 5 of the analysis require an assessment of a claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545(a)(5). To evaluate the RFC, the ALJ must follow a two-step process to: (1) determine whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the complained of pain or other symptoms; and (2) if such an impairment exists, to determine the extent to which it limits his ability to do basic work activities. This latter determination requires an evaluation of the intensity, persistence, and limiting effects of the claimant's symptoms. *See* id. § 404.1545(a)(2)-(3).

At Step 4, the ALJ determined that the impairments suffered by McNelley could reasonably explain his alleged symptoms, but that McNelley's complaints about the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." The ALJ then proceeded to Step 5: the determination of whether — in light of McNelley's RFC, age,

education, and work experience — he retains the capacity to perform appropriate and available work in the national economy. The ALJ determined that McNelley could perform the requirements of sedentary occupations, such as a mailroom clerk, a ticket taker, and an office helper.

On appeal, McNelley maintains that the ALJ's opinion was not supported by substantial evidence in two respects: (1) the ALJ failed to weigh the medical evidence properly; and (2) he failed to properly evaluate McNelley's credibility.

### *The ALJ's Evaluation of the Medical Evidence*

McNelley first contends that the ALJ failed to accord proper weight to the opinion of his treating psychiatrist, Dr. Dedesma. An ALJ must ordinarily "give more weight to the opinions from [the claimant's] treating physicians, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairments." 20 C.F.R. § 416.927(c)(2). A treating physician's opinion, however, is only controlling if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* If the treating physician's opinion is inconsistent with other evidence in the record, the conflict is for the ALJ, not the court, to resolve. *Rodriguez*, 647 F.2d at 222.

The ALJ's decision must nevertheless "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record . . . ." *Social Security Ruling* 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

Dr. Dedesma, on whose opinion McNelley principally relies, wrote on December 10, 2012, that his anxiety and panic disorders rendered him "unable to work for at least the near future." Tr. at 554. On September 23, 2013, Dr. Dedesma opined that McNelley's disability "markedly" limited his ability to meet everyday workplace expectations. *Id.* at 609-610. Dr. Dedesma's psychological assessment also stated that McNelley's panic disorder with agoraphobia had "progressed to a somewhat paralyzing point." *Id.* at 617.

The ALJ, however, chose to give Dr. Dedesma's opinion "little weight" for three articulated reasons. First, the ALJ noted that "Dr. Dedesma's opinion [was] inconsistent with the conservative treatment rendered to . . . [McNelley], consisting solely of medication management." Second, Dr. Dedesma's opinion was "inconsistent with . . . [McNelley's] positive response to that treatment." Third, Dr. Dedesma's opinion was inconsistent with her "own assessment of . . . [McNelley's] GAF scores, which repeatedly indicate that . . . [he] has only mild-to-moderate symptoms." *Id.* at 49-50.

In support of his findings, the ALJ points out that McNelley, against Dr. Dedesma's advice, discontinued an exposure therapy treatment of his symptoms. *Id.* at 110. Moreover, the medical evidence indicated that McNelley had responded positively to his medication regime. *Id.* at 463. McNelley himself reported on April 18, 2012 that Xanax had "helped immensely." *Id.* at 437. He testified that he talks with his mother and sisters daily and occasionally takes bike rides. *Id.* at 95, 123. McNelley's GAF scores ranged from 50 to 55, placing him on the upper border between moderate and serious symptoms. Finally, the ALJ relied on the VE's testimony in concluding, in contrast to Dr. Dedesma, that there are jobs in the national economy McNelley can perform. Although the VE did not personally evaluate McNelley, he did thoroughly review McNelley's file as is apparent from his testimony at the October 18, 2013 hearing. Ultimately, the ALJ was within his discretion in giving small weight to Dr. Dedesma's opinion in light of other medical evidence in the record supporting a finding of lesser impairment. *Rodriguez*, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence . . . is for [the ALJ], not for the doctors or for the courts.").

### *The ALJ's Evaluation of McNelley's Credibility*

McNelley next claims that the ALJ failed to properly evaluate his subjective complaints under *Avery v. Sec'y of Health & Human Servs.*, 797

F.2d 19 (1st Cir. 1986). *Avery* requires a two-step evaluation of credibility: first, the ALJ must find that there exists a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." *Id.* at 21; 20 C.F.R. § 404.1529(b). If such an impairment is found, the ALJ must then determine the severity of the alleged symptoms and the extent to which these symptoms functionally impair the claimant. *Avery*, 797 F.2d at 22-23; 20 C.F.R. § 404.1529(c).

If a claimant's allegations of pain are not wholly substantiated by objective medical evidence, an ALJ should consider the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; and (5) any other factors relating to claimant's functional limitations and restrictions attributable to pain. *Avery*, 797 F.2d at 22; 20 C.F.R. §§ 404.1529 and 416.929(c)(3)(i-vii). If the ALJ questions a claimant's credibility, he must give his reasons for so concluding. *DaRosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986).

The ALJ's opinion followed this two-step process. At the first step, the ALJ found that McNelley suffers from a clinically determinable medical impairment that could reasonably be expected to cause his symptoms. At the

second step, however, the ALJ found McNelley's subjective complaints regarding the intensity, persistence, and limiting effects of his symptoms to be "not entirely credible" given McNelley's testimony, the medical evidence, and the findings of the VE.

McNelley argues that the ALJ substituted his own medical judgment for that of Dr. Dedesma, whose objective psychiatric diagnosis is consistent with his subjective symptoms. McNelley points to *Nguyen*, which faulted an ALJ for substituting his medical judgement for the "uncontroverted" medical opinion of the claimant's treating neurologist. *Nguyen*, 172 F.3d 31 at 35. *Nguyen* however bears little resemblance to this case where the ALJ did not dismiss or ignore Dr. Dedesma's opinion, but found it inflated in light of the medical record as a whole. *See Pires v. Astrue*, 553 F. Supp. 2d 15, 21 (D. Mass. 2008) ("[R]esolution of conflicts in the evidence or questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails as long as it is supported by substantial evidence.").

McNelley further contends that the ALJ not only erred in assuming McNelley's delay in seeking treatment indicated that his symptoms were not severe, but that he also mischaracterized McNelley's involvement in outdoor activities like biking. The ALJ, however, articulated the reasons for his

finding that McNelley's "symptoms do not limit his activities to the extent alleged." Tr. at 49. The ALJ first focused on McNelley's description of his daily activities, including preparing meals, attending doctor's appointments, and doing personal shopping. He noted that while McNelley's symptoms have persisted, they have improved with medication. The ALJ also noted McNelley's treatment as "routine and conservative" and his moderate GAF scores. *Id. See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("[T]he credibility determination of the ALJ . . . is entitled to deference, especially when supported by specific findings.").

## ORDER

Because the ALJ's decision that McNelley is not disabled within the meaning of the SSA is supported by substantial evidence, McNelley's motion for judgment on the pleadings is DENIED. The Clerk will enter judgment for the Commissioner and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE